Ingram-Day Lumber Company *v.* W. E. Rodgers.

[62 South. 230.]

Contracts. *Certainty and definiteness. Breach.*

> Where a lumber company in settlement of a claim for damages contracted with an employee that it would "give him a job for life or so long as it remained in business," such contract could not be enforced, it being too uncertain and indefinite, there being no stipulation specifying the position to be filled nor the compensation to be received therefor.

Appeal from the circuit court of Harrison county.

Hon. Geo. S. Dodds, Special Judge.

Suit by W. E. Rodgers against the Ingram-Lumber Company. From a judgment for plaintiff, defendant appeals.

The facts are fully stated in the opinion of the court.

*Geo. P. Money* and *Flowers, Alexander & Whitfield,* for appellant.

There is one question in the case which in our judgment is sufficient for the purposes of this appeal. This question was saved at the trial in every manner that this court requires of an appellant. It is saved in the examination of witnesses and in the motion to exclude the evidence when the plaintiff rested and in the requests for instructions at the conclusion.

This one question which by us is deemed sufficient and controlling is that there is no showing made by this record of any enforceable contract or of any contract for the breach of which damages could be recovered. The contract is not sufficiently certain in its terms. It cannot be ascertained what job Rodgers was to receive nor what he was to be paid. The alleged contract is lacking in some of its material terms. In fact it omits the most important term necessary.

It needs no authority to support the primary proposition that contracts must be sufficiently certain in their terms to enable the courts to determine precisely what the parties intended.   Here the agreement upon which Rodgers sues is testified to by himself and his wife and son.   They say it was that he should be paid six months' wages at two dollars and fifty cents per day and be given employment for life, or as long as the company should remain in business, at some job which he was able to fill.   It is left in uncertainty what job he was to have and what compensation he was to receive.

In *Jackson* v. *I. C. Railroad Company,* 76 Miss. 607, our court reversed the judgment of the circuit court of Hinds county because a peremptory instruction in favor of the railroad company had been given.   Jackson was claiming that a settlement had been made with him by which he was to receive a job for life in consideration of his releasing his claim for damages on account of certain injuries which he had suffered while in the railroad company's employ.   But in that case it appears from the opinion of the court that Jackson testified that he was to be given a certain job, the very place he was to fill being designated.   He was actually put to work in the position, which he claims was to be given him under his contract, and had collected the wages for several years. The contract in that case depended upon by plaintiff was sufficiently certain in the judgment of this court and it appears that it was sufficient in the view of many authorities on the subject.   But it had in it the one most material element which is absent from this in the case at bar. There it was agreed, so Jackson said, that he was to have one particular job.   He was given the job.   He filed it for several years.   He claimed that he was discharged without cause and he sued for breach of the contract.

It is possible that such contract may be made sufficiently certain either by fixing the position which the party is to hold or by fixing the amount which he is to

receive as compensation. If in some manner the work he is to do is described and the compensation he is to receive is fixed certainty might be worked out of it.

In the case of *Pennsylvania Company* v. *Dolan* (Ind.), 51 Am. St. Rep. 289, it appeared that the railroad company in consideration of the release of a claim for damages agreed to give Dolan employment and pay him the same compensation he was receiving at the time he got hurt. He was given employment of the kind he could do and it paid the wages claimed to have been agreed upon in the said contract and he was afterwards discharged. It was held by the court that the contract was sufficiently certain and was enforceable.

In the *East Line & Red River Railroad Company* v. *Scott* (Tex.), 13 Am. St. Rep. 758, it appeared that Scott had been injured on the railroad and had filed suit against the company to recover damages for his injuries and the suit was compromised. Part of the consideration of the compromise was a promise on the part of the railroad company to give him employment as locomotive engineer as long as Scott should desire to retain such employment. The money agreed to be paid him in case, four thousand, five hundred dollars, was paid and then Scott presented himself for work. The company refused to employ him and he sued for a breach of contract. In stating the case the court said that the agreement was that the company would employ Scott as a locomotive engineer and that for his services as such engineer he should be paid the compensation usual in such employment. In his declaration the plaintiff stated what the employment was to be and what his compensation was to be, to wit: One hundred dollars to one hundred and fifty dollars per month. The court said that Scott could have fixed the term of his services by giving expression to his desire as to the time he wished to serve at the time he presented himself. And the court further found that the contract was sufficiently definite in describing the work which Scott was to

do and the compensation which he was to receive. The contract deal in that case contained the elements which we are insisting are omitted from the alleged contract in the case now before us.

In *Carnig* v. *Carr* (Mass.), 57 Am. St. Rep. 488, 35 L. R. A. 512, the court had before it a contract which the plaintiff claimed had been made with him to give him permanent employment provided he would give up the business which he was in, it being that of an enameler. It was held to be a good contract. The court said that the words "permanent employment" were not too indefinite. But in that case the very work which the plaintiff was to do was agreed upon as was also the wages which he was to receive. The elements which we find to be lacking in the contract now before the court were present in that one.

In *Louisville & Nashville Railroad Company* v. *Offutt* (Ky.), 59 Am. St. Rep. 467, the court dealt with a contract which did not name the time for which the employment was to continue but only that Offutt "should be restored to the position, and that he should be kept so long as he did faithful work for the company." The court found upon an examination of the evidence as to the contract that the work which Offutt was to do was specified and the company was to pay him ninety-five dollars per month. It appears that in the original complaint the position which he was to fill, that of freight conductor, was described but the compensation was not named. The petition was amended by inserting allegations to the effect that he was to receive ninety-five dollars per month. In this case we see that the very material averments not contained in the declaration in the case at bar appeared in the complaint and that when the court said the contract might be enforced the position was taken upon a contract not subject to the objections which we are here making to this one.

*Sax* v. *D. G. H. & M. Ry. Company* (Mich.), 84 Am. St. Rep. 572, is another in which an employee sued for

damages for breach of an alleged contract to give him employment for life. The court found upon examination of the evidence that there was a sufficient showing of a contract by which Sax was to be given employment for life in the position of brakeman on a passenger train. This was the position which Sax had held before he got his hand injured and the agreement was, so he said, that the railroad company should re-employ him and continue him in its service for life.

*Yellow Poplar Lumber Company* v. *Rule,* 106 Ky. 455, 50 S. W. 685. Here was a contract to give Rule employment at two dollars and fifty cents per day as long as the said lumber company was in the sawmill business on the Ohio river. The contract had in it the term omitted from that declared on in the case at bar. The consideration supporting the agreement to give Rule this job was his release of a claim for damages for the loss of his thumb while working in the said company's plant.

*Smith* v. *St. Paul & D. R. R. Co.,* 60 Minn. 330, 62 N. W. 392. Here the defendant had agreed in consideration of Smith's release of his claim for damages on account of an injury to give him his position as engineer as long as he was able to do the work. The job was named and this carried with it the compensation. The court relied upon *Pennsylvania Co.* v. *Dolan, supra.*

*Stearns* v. *Lake Shore Michigan Southern Ry. Co.,* 112 Mich. 651, 71 N. W. 148. Stearns was injured and in consideration of his release of his claim for damages he was paid one hundred and seventy-five dollars and was to be given the position of train baggage master on the train running between Jackson and Advion at a salary of forty-seven dollars and fifty cents per month during his natural life or his ability to do the work. The contract was specific both as to the job and the pay he was to get.

In *Brighton* v. *Lake Shore, etc., Ry. Co.,* 103 Mich. 420, the contract was to give Brighton a position for life in a

position paying forty-three dollars and seventy-five cents per month or a better place.

The contract involved in *McMullan* v. *Dickinson,* 63 Minn. 405, 65 N. W. 661, was to the effect that McMullan should be employed as assistant manager at a salary of fifteen hundred dollars per annum.

*Hobbs* v. *Brush Electric Light Co.,* 75 Mich. 550, 42 N. W. 965, was a suit for personal injuries. The defendant pleaded a release and it was shown by the plaintiff that part of the consideration for the release was an agreement by the company to give him steady employment as lamp trimmer at fifteen shillings per day. The court said that it was a good contract and could be enforced.

In *Kelly* v. *Peter Burgford Stone Co.,* 113 S. W. 486, the Kentucky court held a demurrer should have been overruled which was interposed to a declaration wherein it was not alleged that the contract sued on named the job or compensation. The court relied on *L. & N. R. R. Co.* v. *Offutt, supra,* and *Yellow Poplar Lumber Company* v. *Rule, supra.* But we have seen that all the elements were present in the contracts involved in these cases. The question we are now depending upon was not raised nor discussed by the court in the Kelly case.

The foregoing are all the cases we have found dealing with contracts for service for an indefinite period or for a period to be fixed at the option of one of the parties to the contract.

*J. H. Mize,* for appellee.

It is too well-settled in this state to attempt to take up the time of the court by citing authorities, that one injured may settle for said injuries for a cash consideration in part and for a life time job as the other part of the consideration.

*Jackson* v. *I. C. R. R.,* 76 Miss. 607, and authorities cited by appellant sustain our view of the case in the main.

Counsel for appellant seem to grievously complain that the contract relied on for a life time job or as long as appellant should run its mill at Lyman did not state the nature of the job he was to have nor the wages to be paid. The record shows that appellant had jobs that Rodgers could fill and also that Rodgers went up to the plant to take a job and took a crew of four men with him and he was not permitted to take a job, and this is not denied anywhere in this record.

The declaration alleged the terms of the settlement and what kind of a job he was to have and the appellant did not demur to the declaration and the appellee proved the declaration as laid. In fact, the appellant relied on its release; so we think there is not anything in appellant's contention in this respect.

In the *Jackson case, supra*, the declaration did not allege what kind of a job he was to get, except a job for life.

Appellant does not assail the verbiage of the instruction discussed nor the law announced in the instruction; the only objection to the instruction is that the case as a whole presents no liability on the part of the appellant.

*Hayes* v. *Atlanta & Charlotte Air Line,* 10 Am. & Eng. Ann. Cases, 737, is a case on all fours with the instant case. Appellant claims that there was no damage shown and says that this was recognized by counsel in drawing the instructions, telling the jury that they should find such damages as was proximately caused from the breach of contract as shown by the evidence, and that the evidence did not show damage.

Appellee offered to show what damage he sustained and this was objected to and the objection sustained; but, be that as it may, it is a familiar rule of law that, for the breach of every contract, the law presumes some damages.

In the *Hayes case, supra,* at page 738 the court makes use of the following language: "In this case, if there

were no controversy in regard to the terms of the agreement to release, we should not hesitate to hold that the defense was complete and that plaintiff would be compelled, for any breach of the contract, to sue upon that cause of action. While for manifest reasons we could not compel specific performance of the contract of employment, the plaintiff could recover damages for its breach. The difficulty in fixing the amount would not affect his right of action. The authorities cited in defendant's brief sustain the contention made by counsel in that respect.''

What could be clearer than the language of the court in this case that the difficulty in fixing the amount would not affect his right of action. As the jurors were presumed to be men of common sense, after hearing all of the evidence and knowing what kind of jobs appellant had and what kind of work Rodgers could do, they were perfectly competent to fix his damages.

. Reed, J., delivered the opinion of the court.

In his declaration the appellee alleges that he suffered a personal injury by being run over by a hand car while in the employ of appellant as section foreman on one of its logging roads; that his claim for damages was settled by appellant agreeing to pay him for six months' work at two dollars and fifty cents per day and to give him a permanent job of such kind as he could fill, to continue as long as he lived, or as long as appellant operated its mill, the pay of the job to be the standard wage of a like position filled by other employees; and that the wages for six months have been paid, but that appellant has refused to carry out its agreement to give him permanent work.

Appellant pleaded the general issue, and also filed a special plea, stating that full settlement had been made with appellee for all of his claims and damages, by the payment to him of the sum of two hundred dollars, and

filed with the plea, as Exhibit A thereto, an instrument, duly signed by appellee, in which he acknowledged the receipt of two hundred dollars in full settlement of all claims for damages against the appellant on account of the injury he received. A certificate to this instrument, signed by appellee and attested by two witnesses, states that he had read the paper and understood it, and that he was satisfied with the settlement.

Appellee, in his replication to the special plea, alleges that at the time he signed the release his eyes were in bad condition, and that he could not read and did not read the same, and that he understood the instrument was a receipt for the balance of one hundred and thirteen. dollars and fifty cents due him on the wages for six months at two dollars and fifty cents per day.

It is contended by appellant that the contract, as shown by the testimony, is not sufficiently certain in its terms; is not an enforceable contract, nor one for the breach of which damages could be recovered; it is not shown therein what job Rodgers was to receive, nor what he was to be paid therefor; in short, it fails to state material and necessary facts which would enable the court to determine precisely what the parties intended, and the jury to fix the amount of damages sustained by appellee.

In order to have before us fully and clearly the agreement which appellee claims was entered into by appellant, we quote from the testimony offered by appellee, plaintiff in the court below, on the trial of the case, relative thereto:

The following is from the appellee's own testimony: "Q. State to the court and jury the terms of that settlement. A. The terms of it: They were to pay me for six months at the rate of two dollars and fifty cents per day, and give me a job as long as they were in business there, or my lifetime. Q. Go ahead and state the terms of the contract. A. They were to pay me six months' work at the rate of two dollars and fifty cents a day,

give me a job for my lifetime, or as long as they were in business.''

The following is from the testimony of appellee's son, Milton Rodgers: "Q. State what you heard in that conversation. A. Mr. Mitchell was to pay him six months' full wages at sixty-five dollars a month, which amounted to about three hundred and ninety dollars, and he deducted all my father owed him out of this, which left one hundred and thirteen dollars and fifty cents he paid him in money, and also promised him a lifetime job, or so long as they were in business.''

The following is from the testimony by appellee's wife: "Q. Did you hear any conversation about any settlement? What the terms of it was to be? A. Yes, sir. Q. What was it? A. Mr. Mitchell asked him to settle with him, and he told him, 'All right,' he would settle with him if anyways reasonable; so he gave him one hundred and thirteen dollars and fifty cents to settle, and promised to give him a job as long as he was in bsuiness.''

The following is from the testimony of Ed Hart, a witness on behalf of appellee: "Q. What did you hear? A. I heard him tell him he need not worry about his job; he had a job as long as he lived, or he was in business there, and able to go to work.''

When appellee rested his case, appellant moved the court to exclude the evidence, because the testimony did not show a contract sufficient to entitle the appellee to recover. This motion was overruled by the court. Likewise, at the end of the trial, the court refused to grant a peremptory instruction in favor of the appellant. The appellee demanded damages in the sum of two thousand dollars. The jury returned a verdict for five hundred dollars.

The court erred in overruling the motion and in refusing to grant the peremptory instruction for the defendant. We do not see that the agreement, as shown by the testimony in this case, is sufficient in its terms to

entitle the appellee to recover thereon. The contract is uncertain and indefinite. It does not show what job was to be given appellee, nor what amount he was to be paid for his services. The terms of the agreement are indefinite. According to the testimony, appellee was to be given a job for his life, or as long as appellant was in business at the place where then located. It does not show what special work was to be given him, nor what department of the mill or plant. It is well known that a sawmill company like that operated by appellant employs many men in a number of different positions and has several departments of work. The wages of the employees vary with the work they are called upon to do.

Instruction No. three for the plaintiff, directs the jury to assess appellee's damages "at such a sum as they think from the evidence he is entitled to, which was caused proximately by the breach of contract by defendant." As it is not shown in the contract what employment appellee was to be given, nor what wages he was to be paid, how could the jury have determined the amount of verdict rendered in the case? How can there be any intelligent ascertainment of the damages sustained by appellee on the contract which he claims he had with appellant?

We must keep in mind that this is a suit on a contract. The general rules governing contracts will apply. The terms of a contract must be complete and sufficiently definite to enable the court to determine whether it has been performed or not. The terms and conditions are not sufficiently definite, unless the court can determine therefrom the measure of damages in the case of a breach. This cannot be done in the present case. This contract lacks sufficient precision. There are not enough necessary and material facts stated to render it capable of enforcement.

Appellee's counsel cites and relies on the decisions in the cases of *Jackson* v. *I. C. Railroad Co.*, 76 Miss. 607,

24 So. 874, and *Hayes* v. *Atlanta & Charlotte Air Line Railroad Co.,* 143 N. C. 125, 55 S. E. 437, 10 Ann. Cas. 737. In both these cases the job which was to be given to the plaintiff for life was specified. In the *Jackson Case,* the very place to be filled was designated, and Jackson was actually put to work for definite wages in the position, and held it for several years. In the *Hayes Case* it was shown that he was to be given work as a guard at a street crossing, and that he was to be paid twenty-five dollars per month for his services. It will therefore be seen that the facts of the present case are different from those in the *Jackson* and *Hayes Cases.* The difference consists of the absence in the present case of any stipulation specifying the position to be filled and the compensation to be received therefor.

This case, for the reasons stated, is reversed, and judgment entered here for appellant.

*Reversed.*