RALPH SAVARESE, PLAINTIFF-APPELLANT, v. PYRENE MANUFACTURING COMPANY, DEFENDANT-RESPONDENT.

Argued May 19, 1952—Decided June 9, 1952.

596

*Mr. Bernard Shurkin* argued the cause for appellant (*Messrs. Sanderson & Engel*, attorneys).

*Mr. Frank C. O'Brien* argued the cause for respondent (*Messrs. Pitney, Hardin & Ward*, attorneys).

The opinion of the court was delivered by

WACHENFELD, J. This is an action for damages by reason of the breach of an alleged contract for life employment.

The plaintiff entered the employ of the defendant company in 1917. During the year 1925 the company fielded a baseball team in the Industrial Twilight League. The plaintiff at the time was a labor foreman in charge of one of the defendant's receiving departments and was engaged as a player on the company team. The team was maintained for advertising purposes and the company purchased the equipment and uniforms and paid the necessary expenses.

In 1929 a Mr. Weed, secretary and second vice-president of the company in charge of sales and advertising, called the plaintiff to his office and asked him to become manager of the baseball team. The plaintiff assented. Before the playing season opened in that year, Weed again spoke to the plaintiff complaining of the lack of experienced players and asked him actively to participate in the games as a catcher. The latter demurred on the ground he was getting too old and didn't "feel as if I could get out there physically." He stated he had just come out of the hospital and asked what would happen to him if he should get hurt. Weed reportedly answered: "If you get hurt I will take care of you. You will have a foreman's job the rest of your life." The plaintiff alleges Weed specified the job as "the one I had, the one I earned."

This agreement was never reduced to writing and, Mr. Weed having since died, the proof of it rests on the testimony of the plaintiff.

During the 1929 baseball season, while playing in one of the games, the plaintiff sustained leg injuries resulting in osteomyelitis. Several operations ensued but an arthritic condition developed which finally necessitated the amputation of the knee cap. By 1939 the knee joint had fused to the extent the plaintiff has since been unable to bend or flex it.

While the plaintiff was confined to his home following the injury, Weed visited him and in the presence of his wife stated: "I told you not to worry. You will have your foreman's job there as long as you live."

Despite his injury, the plaintiff continued in the employ of the defendant for 21 years until April 1, 1950, when he was notified by letter the employment was terminated. The letter, enclosing a check for $3,000 less federal income tax withheld, stated this amount represented

"a payment being made to you in connection with the termination of your employment on March 31, 1950, by this Company. This payment is made to you not only in recognition of your many years of faithful service to the Company, but also because the Company desires to have available to it in the future the benefit of your experience and of your knowledge of its affairs which you have acquired from your long association with it. You may be sure that, although we may seek your advice from time to time, we shall not make unreasonable requests."

The plaintiff accepted and cashed the check.

This action was brought demanding reinstatement of the plaintiff to his former position and monetary damages. By a subsequent order entered with the consent of all parties, the demand for reinstatement was dropped and the complaint restricted to a suit for money damages.

The plaintiff demanded a jury trial and the defendant countered with a motion for summary judgment under *Rule* 3:56 on the ground there was no genuine issue as to any material fact. The trial court granted the defendant's

motion, holding that even if the contract and Weed's authority to bind the corporation to it were admitted, nevertheless the damages were uncertain and unliquidated and the acceptance of the sum of $3,000 was, under these circumstances, tantamount to and operated as an accord and satisfaction, precluding the maintenance of the action. The plaintiff's appeal to the Appellate Division was certified here on our own motion prior to argument.

The plaintiff insists summary judgment was improperly entered because a jury question was presented as to the existence of the contract and the defendant's liability.

It is axiomatic that on a motion for summary judgment the evidence and the inferences which may properly be drawn from it will be construed in the light most favorable to the party against whom the motion is made. *Daniels v. Brunton*, 7 *N. J.* 102 (1951) ; *Dubonowski v. Howard Savings Institution*, 124 *N. J. L.* 368 (*E. & A.* 1940). To be enforceable, however, a contract must be sufficiently definite in its terms that the performances to be rendered by each party can be reasonably ascertained. *Montclair Distributing Co. v. Arnold Bakers, Inc.*, 1 *N. J. Super.* 568 (*Ch. Div.* 1948).

"An offer must be so definite in its terms, or require such definite terms in the acceptance, that the promises and performances to be rendered by each party are reasonably certain." *Restatement, Contracts* (1932), *sec.* 32.

Here no salary was agreed upon nor was provision made as to what would occur if the plaintiff became wholly or partially unable to perform his duties or fulfill the terms of his contract. It was not stipulated whether the current salary was to be increased or decreased, depending upon the circumstances and business conditions encountered, making it comparable to that of other employees. No mention was made of the effect disability would have or whether it would vary depending upon its being connected with or disassociated from baseball activities. Many other possible future con-

tingencies were not covered by or provided for in the agreement made.

In *Shaw v. Woodbury Glass Works,* 52 *N. J. L.* 7 (*Sup. Ct.* 1889), affirmed *per curiam* 53 *N. J. L.* 666 (*E. & A.* 1891), suit was brought on an agreement to employ plaintiff to work in the defendant's factory for a set period and "to pay the plaintiff such wages as he might earn in said employment." Finding in favor of the defendant, the court said:

"It seems impossible to construe this transaction, as understood by the plaintiff, into a contract of hiring. The essential terms were not settled by the parties to it. The rate of wages was not fixed, nor was the place in the works to be given to the plaintiff agreed upon. * * *"

A contract similar to the one alleged here was the subject of litigation in *Bird v. J. L. Prescott Co.,* 89 *N. J. L.* 591 (*E. & A.* 1916). The plaintiff had been injured while in the employ of the company and threatened suit. To induce him to forbear, he was offered a life job. The plaintiff was not satisfied with the verbal assurance and demanded "a paper, a contract." He was given a document assuring him of steady and permanent work when he was able to return to it. The court, ruling for the defendant, noted:

"Nothing was said either in the conversation or the written document as to the wages to be paid or any other term of the employment. In this respect the case is subject to the same difficulty that Chief Justice Beasley referred to in *Shaw v. Woodbury Glass Works,* 52 *N. J. L.* 7. The paper as well as the conversation on which the plaintiff relies, amount to no more than a friendly assurance of employment and are not sufficiently definite to make an enforceable contract."

The adjudications dealing with life contracts have been collected and discussed in 135 *A. L. R.* 654; 35 *Am. Jur.* 460, *Sec.* 24, referred to in the recent case of *Eilen v. Tappin's, Inc.,* 16 *N. J. Super.* 53 (*Law Div.* 1951), and the generally prevailing rule is set forth as follows:

"* * * in the absence of additional express or implied stipulations as to duration, a contract for permanent employment, for life

employment or for other terms purporting permanent employment, where the employee furnishes no consideration 'additional to the services incident to the employment, amounts to an indefinite general hiring terminable at the will of either party, and therefore, a discharge without cause does not constitute a breach of such contract justifying recovery of money damages therefor."

. And:

. "* * * where the employee has given consideration additional to the services incident to the employment, or, as it is sometimes stated, where the employee purchases the employment, in the absence of a statute, other terms in the contract, or circumstances to the contrary, the contract for permanent employment, for life employment, or for other terms purporting permanent employment, is valid and enforceable and not against public policy, and continues to operate as long as the employer remains in the business and has work for the employee, and the employee is able and willing to do his work satisfactorily and does not give good cause for his discharge, a discharge without cause constituting a breach of such a contract entitling the employee to recover damages therefor."

Deeming them to be at variance with general usage and sound policy, the courts have shown a marked reluctance to enforce contracts for life employment. In large part this stems from the realization that such contracts frequently are, in practical effect, unilateral undertakings by the employer to provide a job for so long as the employee wishes to continue in it but impose no corresponding obligation upon the latter. In this respect, the burden of performance is unequal as the employer is bound to the terms of the contract whereas the employee is free to terminate it at will.

Agreements of this nature have not been upheld except where it most convincingly appears it was the intent of the parties to enter into such long-range commitments and they must be clearly, specifically and definitely expressed. Only then is it grudgingly conceded that not all such contracts are "so vague and indefinite as to time as to be void and unenforceable because of uncertainty or indefiniteness." 56 *C. J. S., Master and Servant, Sec.* 6, *p.* 70; 1 *Williston on Contracts, Sec.* 39, *p.* 110; 135 *A. L. R.* 646, *et seq.*

Thus, in *Paisley v. Lucas,* 346 *Mo.* 827, 143 *S. W. 2d* 262 (*Sup. Ct.* 1940), it was said:

"A contract for life will be upheld only where the intention, that the contract's duration is for life, is clearly expressed in unequivocal terms."

Similarly, in *Litchfield v. Standard Oil Co.,* 5 *Ohio Supp.* 260 (*Ohio Com. Pl.* 1939), the court observed:

"A contract for employment for life is not an ordinary contract. It is not governed by the same rules with regard to its enforcement, nor is it governed by the same rules with reference to authority to enter into the contract."

The agreement sued upon in *Ingram-Day Lumber Co. v. Rodgers,* 105 *Miss.* 244, 62 *So.* 230 (*Sup. Ct.* 1913), was for life employment so long as the employer remained in business but did not stipulate the kind of work nor the amount of wages. It was held there was no basis for the ascertainment of damages for the breach of the contract and the agreement was, accordingly, unenforceable for uncertainty and indefiniteness.

In some jurisdictions, a contract for life employment has been upheld only where the employee has given services additional to those incident to the terms of his employment and so has "purchased his employment." This rule was termed, in *Eilen v. Tappin's, Inc., supra,* "a device created by the courts to test whether or not the parties specifically and definitely intended to make such a contract."

It is, as noted, only a test of intent and cannot supply the requisite definiteness and clarity when those elements are lacking in the provisions of the agreement itself.

"Although supported by sufficient consideration, it is elementary that a contract for permanent employment, for life employment, or for other term purporting permanent employment, like all other contracts, must satisfy the requirements of definiteness and certainty to be enforceable so as to entitle the employee to recover damages for discharge without good cause." 135 *A. L. R.* 678.

■ Because of the unusual nature of the agreement, the length and permanence of the obligation undertaken, the various unforeseeable events and conditions which may be encountered in such a journey *in futuro* and the unpredictable effects upon the parties, special precautions have been decreed essential both as to consideration and the terms of employment in construing and enforcing the compact. The responsibilities assumed and the obligations imposed will be neither created nor spelled out by mere inference when they are not clearly and unequivocally expressed in the contract itself.

■ In the case *sub judice* the foundation upon which a contract for life is attempted to be constructed is the simple promise, "You will have a foreman's job for the rest of your life." Accepting at full value the plaintiff's version of the conversation which took place with Weed, the terms are vague and uncertain and do not comply with the precision and clarity required by the law. They partake more of the nature of a "friendly assurance of employment" rejected as a contract in *Bird v. J. L. Prescott Co., supra.*

■ There is a further reason why the action cannot be sustained. The affidavits submitted by the plaintiff in opposition to the defendant's motion nowhere show the authority of Weed to bind the defendant to the promises he is alleged to have made and the defendant vigorously denies any such authority existed.

An affidavit of the company's assistant secretary supporting the motion avers the corporation at no time by act or resolution of its directors or in its by-laws authorized any officer or other agent of the company to enter into a contract of life employment nor was any such contract ever ratified by the corporate authorities. No attempt has been made by the plaintiff to contradict these assertions.

A contract of employment for life is of an extraordinary nature, outside the regular custom and usage of business. The authority of a corporate officer to enter into such a contract on behalf of his principal cannot arise merely by implication.

"A corporation is bound by the act of an officer or agent only to the extent that the power to do the act has been conferred upon such officer or agent expressly by the charter, by-laws or corporate action of its stockholders or board of directors, or can be implied from the powers expressly conferred, or which are incidental thereto, or where the act is within the apparent powers which the corporation has caused those with whom its officers or agents have dealt to believe it has conferred upon them." *Aerial League of America v. Aircraft Fireproofing Corp.*, 97 *N. J. L.* 530 (*E. & A.* 1922).

In *Heaman v. E. N. Rowell Co.*, 261 *N. Y.* 229, 185 *N. E.* 83 (1933), the Court of Appeals said:

"Alleged contracts of life employment are, however, so unusual as to have been, with rare exceptions, condemned by the courts as unreasonable and unauthorized. The president or other executive officer of a corporation has no authority as such to make a contract that one should remain in the corporate employ for life even under a general power 'to appoint, remove and fix the compensation of employees.' That any board of directors or other persons responsible for the management of a corporation should give such unusual power to an executive officer cannot be implied. Plain language of the managing board, clearly showing that such was the intention of the corporation, coupled with power actually or impliedly vested in the corporation itself, must be found to justify such a hiring."

The record before us is devoid of any showing of authority upon the part of Weed to bind the defendant to the agreement he is alleged to have made. On this additional ground we likewise conclude the plaintiff has not borne the burden of proof of establishing an enforceable contract.

We have not discussed the doctrine of accord and satisfaction, on which the trial court based its judgment. We have doubt of the application of that doctrine to the facts here presented but the issue need not be determined in view of our conclusions already stated.

For the reasons herein set forth, the judgment is affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices OLIPHANT, WACHENFELD, BURLING and JACOBS—5.

*For reversal*—None.