**Steven D. KREUZBURG, Plaintiff,**

v.

**COMPUTER SCIENCES CORP., COMMERCIAL SERVICES DIVISION, Defendant.**

Civ. No. 85–5580.

United States District Court,
D. New Jersey,
Civil Division.

April 16, 1987.

Thomas A. McKinney, Waldman, Renda & McKinney, P.A., Hawthorne, N.J., for plaintiff.

Pitney, Hardin, Kipp & Szuch, Morristown, N.J., for defendant.

### OPINION

BARRY, District Judge.

The law has always been reluctant to enforce oral promises because so often what the promisee hears differs from the intent of the promisor. The Statute of Frauds, codified in New Jersey at N.J.S.A. 25:1–5, bars enforcement of certain promises unless they are in writing. Moreover, even in cases not controlled by the Statute of Frauds, the courts of New Jersey have enforced oral contracts only when there is clear and convincing evidence of the specific promise made and that promise encompassed all of the terms necessary to its enforcement. *Woolley v. Hoffman-La Roche, Inc.,* 99 N.J. 284, 293, 491 A.2d 1257, *modified,* 101 N.J. 10, 499 A.2d 515 (1985); *Savarese v. Pyrene Manufacturing Co.,* 9 N.J. 595, 601, 89 A.2d 237 (1952).

In the case at bar, plaintiff has stated in the Pretrial Stipulation and Order ("PSO")

that he intends to prove that the defendant made an enforceable oral promise to pay him certain commissions over a three year period. In making such a bold statement, no doubt motivated by his concern over the *Savarese* test, plaintiff seeks to rely on an oral promise unenforceable under the Statute of Frauds. For the reasons set forth below defendant's motion for summary judgment will be granted.

Plaintiff Steven D. Kreuzburg brings this action alleging that he is owed between $116,537.14 and $210,012.00 [1] in unpaid commissions by defendant Computer Sciences Corp., Commercial Services Division ("CSC"), where plaintiff was employed as a Marketing Representative. The service or product generally sold by the CSC division and upon which plaintiff's commissions were normally based was essentially computer time sharing. PSO ¶ 5. Plaintiff began working for CSC in October, 1982 and, at the times relevant to this complaint, was paid both a fixed salary and commission. PSO ¶¶ 1, 3. During this time period, commissions were generally paid to employees, including plaintiff, as set forth in a 1984 Fiscal Year Compensation Plan ("ICP") to which plaintiff agreed on May 31, 1983. PSO ¶ 4 and Exhibit 4 to Defendant's Appendix.

On June 24, 1983, CSC entered into a contract with AT & T for the lease and optional sale of micro systems equipment (the "BASICS" agreement). PSO ¶¶ 6, 7. Plaintiff's involvement with this sale was admittedly significant. Defendant's Moving Brief at 5. Both parties agree that the Fiscal 1984 ICP then in effect was not appropriate for determining a reasonable commission for plaintiff on this sale and, indeed, says defendant, under the ICP plaintiff's commission would have been restricted to $3000.[2]

What is in dispute in this case is what new agreement was reached and whether it was a new agreement or simply a modification of the Fiscal 1984 ICP. However, for purposes of this motion, CSC concedes "that a manager of CSC made a verbal representation that [plaintiff] would receive incentive payments of 3% of the revenues received under AT & T 'BASICS' over the three year period of the Agreement." Moving Brief at 13–41.[3] This concession conforms to what plaintiff states, at least in the PSO, forms the crux of his complaint and what he intends to prove at trial. PSO Plaintiff's Contested Allegations ¶¶ 1–2. Plaintiff voluntarily resigned from CSC on April 30, 1984 and filed this complaint a year and one half later.

N.J.S.A. 25:1–5 provides in relevant part:
No action shall be brought upon any of the following agreements or promises, unless the agreement or promise, upon which such action shall be brought or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or by some other person thereunto by him lawfully authorized.

\* \* \* \* \* \*

e. An agreement that is not to be performed within one year from the making thereof.

Plaintiff opposes defendant's motion on two grounds. First, plaintiff argues that

---

1. One of the most confusing aspects of this motion is following the mathematics of both parties. The amounts I have just set forth are taken from the Pretrial Stipulation and Order in which plaintiff states that he was entitled to a minimum of $146,525.14 and a maximum of $240,000.00 less $29,988.00 (the amount both sides agree at PSO ¶ 14 that plaintiff was paid in commissions for the relevant transaction).

2. Defendant claims that this was the reason it issued its August 14, 1983 modification of the Fiscal 1984 ICP. Moving Brief at 5. *See* Opposing brief at 11.

3. It appears that for purposes of this motion defendant concedes that plaintiff's commission for the BASICS sale was *not* controlled by the Fiscal 1984 ICP. Accordingly CSC's second argument that summary judgment is appropriate because plaintiff's claim for additional incentive payments is barred by certain provisions of the Fiscal 1984 ICP is without merit. The essence of plaintiff's claim is that he received an oral promise which governed the BASICS commissions and which superceded the Fiscal 1984 ICP. Indeed, he alleges at # 12 of his contested allegations in the PSO that "the fiscal 1984 Incentive Compensation Plan did not provide for the payment of a commission on the sale or lease of micro systems equipment."

the agreement in question could be performed in one year. In order to make this argument, however, plaintiff retreats from his stated intention to prove that CSC promised to pay him the BASICS commissions over a three year period and appears to argue that defendant initially agreed to pay plaintiff 3% of the value of BASICS with no time frame and, thus, could have been performed in less than a year. As counsel observed at oral argument, the "only real agreement" was that plaintiff would receive 3% of the value of BASICS.

■ The Statute of Frauds was passed to ensure that certain types of contracts would only be enforceable if in writing. The statute generally applies to contracts which, because of their alleged terms, require a higher degree of proof. Before binding a party to take on a long term contractual commitment—e.g. a contract that can not be performed within a year— the party seeking to enforce that promise must offer it in writing. *See generally* Murray on Contracts, § 312 *et seq.* (1974).

■ In *Loeb v. Peter F. Pasbjerg & Co.*, 22 N.J. 95, 99, 123 A.2d 522 (1956), the Supreme Court of New Jersey noted that N.J.S.A. 25:1–5 "is inapplicable to an oral agreement bearing no fixed term and possibly performable within the year even though complete performance within that term may be unlikely." Accordingly, contracts for life are not barred by this provision because the employee might die within a year of its making. *Shiddell v. Electro Rust-Proofing Corp.*, 34 N.J.Super. 278, 282, 112 A.2d 290 (App.Div.1954) *citing Deevy v. Porter*, 11 N.J. 594, 597, 95 A.2d 596 (1953); Murray on Contracts, § 319 and cases cited therein. But plaintiff, at least as of the time of the PSO, committed himself to proving that the oral agreement at issue here was not for an unspecified term but alleged that it was for three years.[4] The *Loeb* exception is not applicable. Furthermore, even if the court allowed plaintiff to retreat at this late date from this three year argument, New Jersey

law would bar enforcement of this oral promise because, as developed below, the terms of this alleged promise cannot be reasonably ascertained. *Woolley, supra.*

■ Plaintiff also argues that the Statute of Frauds does not bar his claim because AT & T could have terminated BASICS at any time within the three year period subject only to a cancellation penalty. This argument is unavailing, however, because plaintiff alleges that regardless of what AT & T did or did not do "defendant agreed to make these payments of commissions to the plaintiff over a three year period." PSO Plaintiff's Contested Allegations ¶ 2.

Finally, plaintiff argues that once the sale was made there was nothing left for him to do and the Statute of Frauds does not apply where one of the parties to the oral agreement has fully completed its performance. This is a well established exception to the Statute of Frauds meant to prevent unjust enrichment. *Edwards v. Wyckoff Electrical Supply Co.*, 42 N.J.Super. 236, 242, 126 A.2d 29 (App.Div.1956) *citing Vide, Cauco v. Galante*, 6 N.J. 128, 138, 77 A.2d 793 (1951). *See also Thompson v. Van Hise*, 133 N.J.L. 524, 45 A.2d 182 (1946). CSC argues that this exception does not apply to this case because when plaintiff voluntarily resigned in April, 1984 he was still "required to perform additional future services for CSC as a condition of receiving incentive payments. Under the ICP, plaintiff would receive incentive payments if and only if he remained employed by CSC and continued to assist CSC in servicing the BASICS contract." Reply Brief at 3. CSC's argument ignores the fact that, as noted above, for purposes of the statute of frauds argument, CSC has conceded that the ICP did not control this commission and plaintiff does not suggest that it did.

It is plaintiff's deposition testimony that defeats his claim that he had nothing left to do. At pages 46 and 47, plaintiff states that it was his responsibility to administer

---

**4.** Indeed, in his deposition at 41, plaintiff stated that, even as modified, he was to be paid "over longer than a one-year period."

the BASICS agreement and that after AT & T and CSC entered into that agreement, he devoted large portions of his time to its implementation. For instance, during the first six months after the agreement was executed, 90% of plaintiff's time was spent administering it and, for the next three months until he resigned, something less than 50% of his time was spent doing so. It appears that the BASICS agreement provided for the installation of 401 units at approximately 50 locations over what turned out to be an extended period of time. Thus the court concludes that, by his own admission, it was plaintiff's responsibility to implement the BASICS agreement and that that responsibility had not come to an end when plaintiff voluntarily resigned in April, 1984. Therefore, this exception to the Statute of Frauds does not apply and the court finds that plaintiff is barred from relying on the alleged oral promise.

I note that even if this motion were not granted on Statute of Frauds grounds, I doubt seriously whether plaintiff could establish the specific terms of the alleged oral contract required in order to demand its performance. His position has floated even as to whether that contract required payment of "3% of the gross revenues to be received by the Defendant from AT & T" with payment to be made "over a three year period" (PSO, Plaintiff's Contested Allegations at A.1, 2) or "3% of the value of the BASICS" (Pl. Br. at 3).[5] Moreover, plaintiff's deposition transcript is extremely vague as to many of the terms of the supposed contract. Separate and apart from whether or not the three year time frame was one of the terms of the alleged oral contract, plaintiff admitted that when the oral contract he seeks to enforce was entered into, he did not know how the commission was to be paid, whether or not it would be paid over the life of the lease, or even what was meant by value of the sale. Dep. at 33, 34, 39.

In effect, plaintiff had a Hobson's choice. If plaintiff alleged, as he does, that the oral contract was an entirely new promise apart from the ICP, his claim is defective under *Savarese.* If he attempted to rely on the ICP, which he does not, his claim is clearly spurious because the ICP states it "constitutes the sole method of paying incentives to Representatives during the period April 1, 1983 through March 31, 1984." Fiscal 1984 ICP at 1. Plaintiff's complaint and claims as stated in the Pretrial Stipulation and Order attempt to chart a narrow path between these two pits. Unfortunately for plaintiff, the path has proven to be a dead end and plaintiff has taken the fatal plunge.

The court will enter an order granting CSC's motion for summary judgment.

---

**5.** While plaintiff's deposition at 33 refers to "three percent of the value of the sale" as the initial decision and counsel, at oral argument, referred to that as the "only real agreement", it appears that plaintiff's answer to the question posed at that point in the deposition was incomplete. At p. 40 of the deposition, he states that "Now we've gone from three percent over a lease period of three years, to ... one percent...."