Christine **OBENDORFER** and Darin Portney, individuals, Plaintiffs,

v.

The **GITANO GROUP, INC.**, a New York Corporation and Horatio San Martin, an individual, Defendants.

Civ. A. No. 93–140 (JCL).

United States District Court, D. New Jersey.

Dec. 2, 1993.

Michael S. Kimm, Hackensack, NJ, for plaintiff.

Stephen W. Feingold, Reid & Priest, New York City, for defendants.

## AMENDED MEMORANDUM
## AND ORDER

LIFLAND, District Judge.

Presently before the Court is defendants' motion to dismiss the third, fourth and fifth counts of the Complaint pursuant to *Fed. R.Civ.P.* 12(b)(6), and to dismiss the sixth count of the Complaint pursuant to *Fed. R.Civ.P.* 12(b)(6) and 12(b)(1). Plaintiffs oppose the motion.

### BACKGROUND

This action arises out of an employer-employee relationship. (Complaint ¶¶ 2, 7–10). Plaintiff Christine Obendorfer ("Obendorfer") was employed by The Gitano Group Inc. ("Gitano"). Between October 1991 and February 1992 she was a junior accountant and reported to Horatio San Martin ("San Martin"). (Complaint, ¶ 9). Plaintiffs allege that on numerous occasions during that time period San Martin told Obendorfer that "women belong in the kitchen" and "women are inferior" and made other degrading comments based on her gender. (Complaint, ¶ 10). Plaintiffs also allege that in around February 1992, San Martin told Obendorfer that her prospective fiance, Darin Portney ("Portney"), a lawyer, was a "cheat" and a "liar like all other lawyers," and that Portney was "cheating" on her and therefore should not be trusted. (Complaint, ¶ 11).

Subsequently, Obendorfer filed a Complaint with Linda Klein ("Klein") at Gitano's Human Resources Department and was informed that San Martin was given a "final notice" about his conduct. (Complaint, ¶ 12). Obendorfer alleges that through Klein, Gitano warranted that San Martin's conduct would stop. Obendorfer alleges that despite the warning San Martin continued to engage in unwelcome and unlawful conduct against her. (Complaint, ¶ 12).

In late February 1992, Obendorfer was transferred to the Tax department, which consisted of two employees. The purpose of the transfer was to separate her from San Martin. (Complaint, ¶ 13). Obendorfer alleges that the transfer to the tax department, with little or no prospect of advancement, was motivated by a desire "to be rid of her." (Complaint, ¶ 15).

Obendorfer alleges that following the transfer San Martin with increasing frequency "continued to assert his physical presence" in her view, unnecessarily repeatedly visited her new work area, and attempted to initiate unwanted conversations. Obendorfer claims that these visits were contrary to Gitano's assurances that she would find a comfortable work place in the Tax Department. (Complaint, ¶ 14). In or about May 1992 Obendorfer resigned. (Complaint, ¶ 15). Obendorfer alleges that she was constructively terminated by defendants' conduct. (Complaint, ¶ 15).

The Complaint alleges six causes of action. Counts one and two allege sexual harassment and sexual discrimination in violation of Title VII and the New Jersey Law Against Discrimination. Count three alleges that Gitano breached an oral contract with Obendorfer. Count four alleges an intentional infliction of emotional distress claim against Gitano and San Martin. Count five alleges that San Martin tortiously interfered with the employment contract between Gitano and Obendorfer. In Count six, Portney alleges a cause of action against San Martin for slander. Defendants move to dismiss the third, fourth, fifth, and sixth counts.

### DISCUSSION

A motion to dismiss pursuant to *Fed. R.Civ.P.* 12(b)(6) may be granted only if, accepting all well pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief. *Bartholomew v. Fischl*, 782 F.2d 1148, 11523 (3d Cir.1986); *Angelastro v. Prudential–Bache Securities, Inc.*, 764 F.2d 939, 944 (3d Cir.), *cert. denied*, 474 U.S. 935, 106 S.Ct. 267, 88 L.Ed.2d 274 (1985). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90

(1974). In setting forth a valid claim, a party is required only to plead "a short plain statement of the claim showing that the pleader is entitled to relief." *Fed.R.Civ.P.* 8(a).

■ *Count Three—Breach of Employment Agreement.* Obendorfer alleges that "[a]t the time she was hired by Gitano, the parties entered into an oral agreement for employment with express or implied covenants of good faith and fair dealing in their respective responsibility." (Complaint, ¶ 26). The Complaint alleges that "Obendorfer's obligations consisted of her availability, willingness to work, job-related performance and the like, [and] Gitano ... owed a duty to Obendorfer and other employees to maintain a work place free of supervisory abuse and hostility, and to discourage discrimination or harassment on the basis of sex, as provided by law." (Complaint, ¶ 26).

Gitano moves to dismiss Obendorfer's claim that Gitano breached an oral employment contract because the Complaint fails to set forth the specific terms of the alleged oral contract and fails to set forth adequate consideration to support the alleged oral contract.

■ Employment contracts for an indefinite duration create an at-will employment relationship. *e.g., Fregara v. Jet Aviation Business Jets,* 764 F.Supp. 940 (D.N.J.1991). The leading case in New Jersey on permanent employment contracts is *Savarese v. Pyrene Manufacturing Co.,* 9 N.J. 595, 89 A.2d 237 (1952). *Savarese* establishes the general rule as follows:

> ... in the absence of additional express or implied stipulations as to duration a contract for permanent employment, for life employment or for other terms purporting permanent employment, where the employee furnishes no consideration additional to the services incident to the employment, amounts to an indefinite general hiring terminable at the will of either party, and therefore, a discharge without cause does not constitute a breach of such contract justifying recovery of money damages therefore.

*Id.* at 600–601, 89 A.2d 237.

■ However, in certain situations, New Jersey courts will enforce an indefinite duration contract as a long range employment contract. *Shiddell v. Electro Rust–Proofing Corp.,* 34 N.J.Super. 278, 112 A.2d 290 (App. Div.1954). A long range employment contract is enforceable if the intention of the parties to make such a contract is clearly, specifically and definitely expressed, and the intent of the parties may be ascertained from the language employed, from the attendant circumstances, and from the presence of consideration from the employee additional to the services incident to his employment. *Fregara,* 764 F.Supp. at 946; *Shiddell,* 34 N.J.Super. at 289, 112 A.2d 290.

In *Fregara,* the Court held that no long term oral contract of employment existed where the employee failed to point to any language which addressed the specific terms of the alleged oral contract, such as wages, hours, job responsibilities or definition of "just cause for termination." *Id.* at 947. The court further noted that the plaintiff's claim would fail for lack of consideration even if he succeeded in establishing sufficiently precise contract terms because plaintiff failed to establish the "existence of consideration additional to the services incident to his employment." *Id. See also, Brunner v. Abex Corp.,* 661 F.Supp. 1351, 1356 (D.N.J.1986) ([A] long term employment commitment is only enforceable if there is clear and convincing proof of a precise agreement and the long term commitment is supported by consideration from the employee in addition to the employee's continued work).

Count Three of the Complaint fails to plead the existence of an oral agreement for continued employment. The Complaint fails to adequately allege the existence of a long term oral employment contract for two reasons: (1) the Complaint fails to allege any of the terms of the alleged oral contract, and (2) the Complaint fails to allege that Obendorfer supplied consideration separate and apart from her willingness to work. The only consideration allegedly supplied by Obendorfer in support of the oral contract is "Obendorfer's ... availability, willingness to work, job-related performance, and the like." (Complaint, ¶ 26). Therefore, the Court will dismiss Count three of Obendorfer's Complaint.

In her brief in opposition, Obendorfer for the first time alleges that the oral contract between Obendorfer and Gitano was created not when Obendorfer was hired but when Obendorfer was transferred to the tax department. Obendorfer alleges that this transfer was involuntary and was the legal detriment supplying the necessary consideration for the purported oral agreement. Obendorfer argues that when she was transferred to the tax department because of San Martin's sexual harassment, she was "given oral assurances of permanent employment security, assurances that she would no longer be harassed by San Martin, and assurances that she would be promoted based on performance." (Plaintiff's Brief, p. 4–5). Obendorfer alleges that in reliance on Gitano's promise, she left the department in "which she had accumulated seniority rights and had cultivated friends and had otherwise developed professionally, to a new department with new responsibilities" (Plaintiff's Brief, p. 5–6). Plaintiff seeks leave to amend her Complaint to include these allegations.

■ Obendorfer's allegations in her brief that her transfer to the tax department was involuntary are not sufficient to establish consideration to support a contract for permanent employment. Obendorfer has failed to allege any consideration "additional to the services incident to [her] employment." *Fregara*, 764 F.Supp. at 946. Obendorfer has simply been transferred to a different department in which she continued to perform similar services for Gitano.[1] Thus, although the Court might ordinarily permit a plaintiff to amend her Complaint to allege facts contained in her brief, the Court finds that in the instant case such amendment would be futile since the Court is of the opinion that the additional allegations made by Obendorfer in her brief are insufficient to support a contract for permanent employment.

■ In her brief Obendorfer also alleges that Gitano breached an implied covenant of good faith and fair dealing. This claim is without merit. In the absence of a contract there is no implied obligation of good faith and fair dealing. *Noye v. Hoffman–La Roche, Inc.*, 238 N.J.Super. 430, 570 A.2d 12 (App.Div.), *cert. denied*, 122 N.J. 146, 147, 584 A.2d 218 (1990). As stated in *Brunner*:

> Since plaintiff was working without a contract as an at-will employee, his argument that every contract imposes a duty of good faith and fair dealing is irrelevant. One cannot read additional terms into a nonexistent contract.

*Brunner*, 661 F.Supp. at 1356. Thus, any amendment to the Complaint to include these allegations would be futile.

*Count Four—Intentional Infliction of Emotional Distress.* San Martin is alleged to have made demeaning remarks about women and made disparaging remarks about Obendorfer's prospective fiance. (Complaint, ¶¶ 10–11). Furthermore, after Obendorfer was transferred to the tax department, San Martin allegedly repeatedly and unnecessarily visited her new work area in the Tax Department and attempted to initiate unwanted conversations with her. (Complaint, ¶¶ 9, 13–14).

Obendorfer alleges that Gitano allowed this hostile work environment to persist. (Complaint, ¶ 14). Obendorfer alleges that Gitano failed to provide Obendorfer with a safe working environment, failed to investigate her complaints and failed to supervise, control, or discipline San Martin. (Complaint, ¶ 30). Obendorfer alleges that as a result of defendants' conduct she has "suffered great emotional distress, severe mental anguish and painful humiliation and embarrassment among her friends and fellow employees, disruption of her personal life and loss of enjoyment of the ordinary pleasures of everyday life." (Complaint, ¶ 31).

■ With respect to claims for intentional infliction of emotional distress, New Jersey courts have adopted the definition of the *Restatement (Second) of Torts § 46* (1965). *Buckley v. Trenton Saving Fund Soc.*, 111

---

1. Similarly, the Court rejects Obendorfer's argument that the transfer to another department gave rise to a contract by promissory estoppel. A key element in the theory of promissory estoppel is that the promisee must suffer some detriment in reliance on the promise. *See e.g. Fregara*, 764 F.Supp. at 948–949. In this case, Obendorfer has not alleged that she suffered any meaningful detriment.

N.J. 355, 544 A.2d 857 (1988). Under this definition, the plaintiff must prove conduct by the defendant "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Buckley,* 111 N.J. at 366, 544 A.2d 857 (quoting *Restatement (Second) of Torts* § 46, comment d). The act must have been done with the intent to do the act and to produce the emotional distress, or in deliberate disregard of a high probability that emotional distress will follow. *Id.* The defendants' actions must have been the cause of the emotional distress, and the distress must be "so severe that no reasonable man could be expected to endure it." *Id.* (quoting *Restatement (Second) of Torts* § 46, comment j). Before submitting such a claim to the jury, the court must first determine whether reasonable minds could conclude that the alleged conduct has met this standard. *Restatement (Second) of Torts* § 46, comment h.

█ Defendants argue that the conduct alleged in the Complaint does not rise to the level of outrageousness necessary to provide a basis for recovery. The Court agrees. The acts alleged require separate analysis. As to Gitano, the conduct allegedly engaged in clearly does not rise to the level of outrageousness necessary to support a claim of intentional infliction of emotional distress. The Complaint alleges that Gitano did not take steps to stop San Martin's improper conduct. At the most, the Complaint alleges that Gitano was negligent in failing to supervise San Martin and providing Obendorfer with a non-hostile working environment. The Court notes that Gitano did in fact take some steps to prevent San Martin's conduct. Gitano warned San Martin about his conduct and transferred Obendorfer to the tax department, away from San Martin. (Complaint, ¶¶ 10 & 13). No reasonable juror would be able to find that Gitano's conduct rose to the level of outrageousness required under New Jersey law. Therefore, the Court will dismiss Obendorfer's intentional infliction of emotional distress claim against Gitano.

█ The allegations against San Martin present a more difficult question for the Court. San Martin is alleged to have made numerous demeaning remarks about women and made disparaging remarks about Obendorfer's prospective fiance. (Complaint, ¶¶ 10–11). Although the comments allegedly made by San Martin are offensive, they do not rise to the level of outrageousness required to support the tort of intentional infliction of emotional distress. This Court does not believe that New Jersey intended insulting and degrading comments to be actionable under this tort.

Absent other conduct, these insults, no matter how out of touch they are with today's respect for the equality of women, are still nothing more than verbal assaults all too common in today's rude and inconsiderate social and business interactions. A court is ill-equipped to punish lack of respect and consideration for one's fellow's feelings, and therefore New Jersey has prescribed a heavy burden for one alleging intentional infliction of emotional distress. The court must conclude that these insults, no matter how ill-advised, do not reach the threshold prescribed by the New Jersey courts. A civilized community, by definition, must be able to tolerate some friction between its members without resorting to litigation over every verbal insult, actual or perceived. Thus, the conduct here alleged is not "utterly intolerable in a civilized community."

Besides the degrading comments allegedly made by San Martin, Obendorfer alleges that San Martin repeatedly and unnecessarily visited her new work area in the Tax Department and attempted to initiate unwanted conversations with her. (Complaint, ¶¶ 9, 13–14). Although in some situations degrading comments coupled with continued discriminatory and harassing conduct might be sufficiently outrageous to support a claim of intentional infliction of emotional distress, *see Porta v. Rollins Environmental Services (NJ), Inc.,* 654 F.Supp. 1275 (D.N.J.1987), this is not such a case. Obendorfer does not allege any conduct engaged in by San Martin, other than his comments and attempts to initiate unwanted conversations. This is not sufficiently outrageous to go beyond all pos-

sible bounds of decency. Therefore, the court will dismiss Obendorfer's intentional infliction of emotional distress claim against San Martin.

■ *Count Five—Tortious Interference with Employment Contract.* Obendorfer alleges that San Martin, an employee of Gitano, wrongfully interfered with the employer-employee relationship between Obendorfer and Gitano. (Complaint, ¶ 33). Obendorfer further alleges that "San Martin is a supervisor in Gitano's employ whose acts and omissions . . . were committed in the course of his employment." (Complaint, ¶ 8).

■ Under New Jersey law, an action for tortious interference cannot be maintained "where the claim is by one party against the other party to the contract and not against a third party interloper who has interfered with the contractual relationship." *Fregara v. Jet Aviation Business Jets,* 764 F.Supp. 940, 955 (D.N.J.1991) quoting *Sandler v. Lawn–A–Mat Chemical & Equipment Corp.,* 141 N.J.Super. 437, 450, 358 A.2d 805 (App. Div.), *cert. denied,* 71 N.J. 503, 366 A.2d 658 (1976). *See also, Kopp v. United Technologies, Inc.,* 223 N.J.Super. 548, 539 A.2d 309 (App.Div.1988) ("[I]t is fundamental to a cause of action sounding in tortious interference with contractual relations that the claim be directed against a third party. A party cannot be guilty of inducing the breach of its own contract.").

The issue in the instant motion is whether San Martin, as a supervisor at Gitano, is a third party with respect to Obendorfer's employment. In *Michelson v. Exxon Research and Engineering Co.,* 808 F.2d 1005, 1007–08 (3d Cir.1987), the Third Circuit summarily dismissed a claim against a defendant supervisory employee for tortious interference with plaintiff's employment relationship. Applying Pennsylvania law, the Court set forth the test for determining whether an officer or agent of a corporation is a third party to an employment contract between the employer and the employee:

> It is also settled Pennsylvania law that corporations act only through its officers and agents, and that a party cannot be liable for tortious interference with a contract to which he is a party. If [the defendant employee] was acting within the scope of his employment in allegedly interfering with appellant's contract, he was acting on behalf of [the employer] and his claim is barred . . . If [the employee] was acting outside the scope of his employment in allegedly interfering with appellant's contract, appellant's claim is not barred . . . (Citations Omitted).

*Id.*[2]

Thus, if San Martin was acting within the scope of his employment when allegedly harassing Obendorfer and interfering with her employment with Gitano, Obendorfer's claim is barred because San Martin is not a third party. Obendorfer alleges in ¶ 8 of her Complaint that San Martin's acts were committed in the course of his employment. Therefore, Obendorfer's claim against San Martin for tortious interference will be dismissed.

■ *Count Six—Slander.* Portney brings a slander claim against San Martin. Portney alleges that because "San Martin's utterances attacked Portney's professional character and standing, it is slander per se." (Complaint, ¶ 35). The Complaint alleges that San Martin told Obendorfer that Portney was a "cheat" and a "liar like all other lawyers," and that Portney was "cheating" on her and therefore could not be trusted. (Complaint, ¶ 10).

The Court does not have independent jurisdiction over Portney's defamation claim. Portney asserts that, pursuant to 28 U.S.C. § 1367(a), the Court has supplemental jurisdiction over this state law claim. (Complaint, ¶ 4). Defendants assert that Portney's claim

2. Although the Third Circuit applied Pennsylvania law in *Michelson,* the Court notes that New Jersey law and Pennsylvania law are the same. Under the law of both jurisdictions, to maintain a tortious interference claim, plaintiff must allege that a third party interfered with a contractual relationship, and under the law of both jurisdictions a corporation can only act through its agents and officers. *See e.g., Fregara,* 764 F.Supp. at 955 (dismissing tortious interference claim against the plaintiff's supervisors because "plaintiff's supervisors . . . were not interlopers or third parties to [the corporation's] employment contract with plaintiff.")

does not fall within the Court's supplemental jurisdiction.

Pursuant to the Judicial Improvements Act of 1990, Congress codified the long-standing doctrines of "pendent jurisdiction" and "ancillary jurisdiction" and renamed them "supplemental jurisdiction." 28 U.S.C. § 1367(a) provides in pertinent part,

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case and controversy under Article III of the United States Constitution....

Claims form part of the same case or controversy for jurisdictional purposes if

> the relationship between [the federal] claim and the state claim permits the conclusion that the entire action before [the] Court comprises but one constitutional 'case.' The federal claim must have substance sufficient to confer subject matter jurisdiction on the court. (citation omitted). The state and federal claims must derive from a common nucleus of operative facts.

*United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966).

The Court is of the opinion that Portney's defamation claim is not so related to Obendorfer's sexual harassment and sex discrimination claims as to form part of the "same case and controversy" as the Title VII claims within this Court's original jurisdiction. Only the maker of the statements is common to the claims. Gitano is not implicated in Portney's claims nor is Obendorfer a plaintiff with respect thereto. Moveover, the Complaint alleges that San Martin's degrading comments and harassment occurred over a period of eight months (October, 1991—May 1992) while San Martin's alleged defamatory statements regarding lawyers occurred only once in February, 1992, and an entirely different body of law governs Portney's defamation claim. Therefore, the Court will dismiss Count six for lack of subject matter jurisdiction.[3]

Accordingly,

**IT IS** on this 30th day of November, 1993 **ORDERED** that defendants' motion to dismiss Count three is granted; and

**IT IS FURTHER ORDERED** that defendants' motion to dismiss Count four is granted; and

**IT IS FURTHER ORDERED** that defendants' motion to dismiss Count five is granted; and

**IT IS FURTHER ORDERED** that defendants' motion to dismiss Count six is granted.

3. The Court has considered whether Portney will be time-barred from bringing his slander claim in state court if this Court determines that his claims are not within the Court's supplemental jurisdiction. The Court has concluded that Portney will not be time-barred. 28 U.S.C. § 1367(d) provides that "the period of limitations for any claim asserted under [§ 1367(a)], and for any other claim in the same action that is voluntarily dismissed at the same time as or after the dismissal of the claim under subsection (a), shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period."