### Frank DeJOY, Plaintiff,

v.

**COMCAST CABLE COMMUNICATIONS INC., Suburban Cablevision, Comcast Cable of New Jersey, Thomas Baxter, individually and his official capacity, and Michael Doyle, individually and in his official capacity, Defendants.**

### Civil Action No. 96–1135 (AJL).

United States District Court,
D. New Jersey.

Oct. 8, 1996.

Mark J. Blunda, Sills Cummis Zuckerman Radin, Tischman, Epstein & Gross, Newark, NJ, for Plaintiff.

Robert A. White, Morgan, Lewis & Bockius, Philadelphia, PA, for Defendants.

## OPINION

LECHNER, District Judge.

This is an action by Frank DeJoy ("De-Joy") against Comcast Cable Communications, Inc. ("Comcast Cable"), Suburban Cablevision ("Suburban Cablevision"), Comcast Cable of New Jersey, Thomas Baxter ("Baxter") and Michael Doyle ("Doyle") (collectively, the "Defendants"). The amended complaint (the "Amended Complaint") asserts claims, arising from the termination of De-Joy's employment with Suburban Cable, pursuant to the Age Discrimination in Employment Act ("ADEA") 29 U.S.C. § 621 *et seq.;* the Americans with Disabilities Act ("ADA") 42 U.S.C. § 12101 *et seq.;* the New Jersey Law Against Discrimination ("NJLAD") *N.J.S.A.* 10:5–12 *et seq.,* as well as various common law contract and tort claims. Jurisdiction is alleged pursuant to 28 U.S.C. §§ 1331 and 1343, 29 U.S.C. § 626(c) and 42 U.S.C. § 12117(a). Amended Complaint, ¶ 2. Pendent jurisdiction is alleged over the State and common law claims. *Id.* Diversity jurisdiction is not alleged.

Currently before the court is the Defendants' motion to dismiss counts VI, XI and XII of the Amended Complaint entirely and to dismiss counts I, III and V of the Amended Complaint as against Doyle and Baxter, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)") (the "Motion to Dismiss").[1] For the reasons set forth below, count VI is dismissed in its entirety and counts I, III and V are dismissed as against Doyle and Baxter. Counts XI and XII, however, are not dismissed.

*Facts* [2]

### A. *Parties*

DeJoy is a citizen of the State of New Jersey. Amended Complaint, ¶ 7. Comcast Cable is a corporation "doing business throughout the State of New Jersey" and maintaining offices in Union, New Jersey. *Id.,* ¶ 8. At all relevant times, Baxter was the President of Comcast Cable. *Id.* ¶ 9. At all relevant times, Doyle was Regional Vice President of Comcast Cable. *Id.,* ¶ 10. At all relevant times, Suburban Cablevision was a corporation "doing business in the State of New Jersey" and maintaining offices in Union, New Jersey. *Id.* ¶ 11. Comcast Cable is "a successor entity to Suburban Cablevision." *Id.*

### B. *Procedural History*

DeJoy filed a timely charge of employment discrimination with the Equal Employment Opportunity Commission ("EEOC") on 14 June 1995, which was within 180 days of his allegedly unlawful termination. Amended Complaint, ¶ 4; *see* 29 U.S.C. § 626(d); 42 U.S.C. § 2000e–5(e)(1). On 26 January 1996, the EEOC provided DeJoy with a "notice of right to sue." Amended Complaint, ¶ 5 & Exhibit A. DeJoy timely filed a complaint (the "Complaint") on 15 March 1996. *See* 29 U.S.C. § 626(d); 42 U.S.C. § 2000e–5(f)(1).

On 21 May 1996, the Defendants served DeJoy with a notice of motion to dismiss the Complaint, together with a memorandum of law. Moving Brief at 2. On 18 June 1996, DeJoy served his opposition to the Defendants' motion to dismiss. *Id.*

At a status conference, held on 24 June 1996, however, DeJoy, in light of the motion to dismiss, requested and was given leave to file the Amended Complaint. Moving Brief at 2. DeJoy was given until 1 July 1996 to amend the Complaint to address the issues raised by Defendants in their motion to dismiss. *Id.* On 28 June 1996, DeJoy filed the

---

1. DeJoy submitted: Plaintiff's Brief in Opposition to Defendants' Motion to Dismiss (the "Opposition Brief").

   Defendants submitted: Memorandum of Law in Support of Defendants' Motion to Dismiss Plaintiff's Amended Complaint attaching exhibits (the "Moving Brief"); Defendants' Reply Memorandum of Law in Support of Their Motion to Dismiss attaching exhibits (the "Reply Brief").

2. Unless otherwise indicated, the facts are taken from the Amended Complaint. For the purposes of the instant opinion, all of the allegations contained in the Amended Complaint are presumed to be true. *See In re Westinghouse Securities Litigation,* 90 F.3d 696, 706 (3d Cir.1996).

Amended Complaint. The Defendants subsequently filed the Motion to Dismiss.

### C. *Background*

DeJoy was born on 12 January 1939 and at the time of the filing of the Amended Complaint was fifty-seven years old. Amended Complaint, ¶ 12. DeJoy had thirty years of "diverse experience in the cable television industry." *Id.,* ¶ 13.

DeJoy started his employment with Suburban Cablevision in 1981. Amended Complaint, ¶ 14. He began as the Vice President of Engineering, was promoted to Vice President of Operations and eventually became "Vice President and General Manager of the enterprise in January of 1988." *Id.* DeJoy remained in the position of Vice President and General Manager from January of 1988 until January of 1995. *Id.,* ¶ 15.

In 1994, Comcast Cable acquired Suburban Cablevision. Amended Complaint, ¶ 17. "During the final six months of 1994," Doyle repeatedly told DeJoy that DeJoy would become Area Vice President for Northern New Jersey and General Manager of Suburban Cablevision and Cable–TV of Jersey City upon Comcast Cable's acquisition of Suburban Cablevision. *Id.,* ¶¶ 18–19. Doyle, moreover, told "State Regulators and hundreds of employees of Suburban Cablevision that there would be no change in the management structure of Suburban Cablevision upon [Comcast Cable's] acquisition of [Suburban Cablevision] and that [DeJoy] would be the Area Vice–President." *Id.,* ¶ 20.

"During 1994 and the beginning of 1995," Baxter, who had authority to act on behalf of Comcast Cable and Suburban Cablevision in business and personnel matters, "[r]eiterated to third parties the assurances made by [Doyle] regarding [DeJoy's] job security and retention and the continuation of the same management structure of [Suburban Cable]." *Id.,* ¶¶ 21–22.

DeJoy remained in the position of Vice President and General Manager of Suburban Cablevision when Comcast Cable finalized its acquisition of Suburban Cablevision, on or about 22 December 1994. *Id.,* ¶¶ 23–24. On 8 December 1994, however, because of "a rup-tured aortic abdominal aneurysm[,]" DeJoy "underwent emergency surgery and was hospitalized in critical condition in the intensive care unit of St. Barnabas Hospital[.]" *Id.,* ¶ 25. DeJoy remained hospitalized until 26 December 1994. *Id.* After being discharged from the hospital, DeJoy remained on medical leave from work while he recuperated. *See id.,* ¶ 28.

On or about 10 January 1995, while DeJoy was on medical leave, the Defendants notified DeJoy of his removal as Vice President and General Manager of Suburban Cablevision. *Id.,* ¶ 28. The Defendants replaced DeJoy with Joseph Fischer ("Fischer"). *Id.,* ¶ 29. Fischer was younger than DeJoy, had less experience and had only recently been hired by Comcast Cable. *Id.,* ¶¶ 29–31. "In or about March of 1995," the Defendants appointed Michael Schenker ("Schenker") General Manager of Suburban Cablevision. *Id.,* ¶ 33. Schenker was also younger than DeJoy and had less experience. *Id.*

In early 1995, DeJoy challenged his removal as Vice President and General Manager of Suburban Cablevision by informing the Defendants their actions "violated the representations made to him and to many others" regarding his employment and that he believed he had been wrongly removed because of his age and disability. Amended Complaint, ¶ 34. DeJoy's attorney subsequently wrote to the Defendants informing them "charges of employment discrimination would be filed with the EEOC and the New Jersey Division on Civil Rights if [D]efendants failed to remedy the situation." *Id.*

Defendants retaliated against DeJoy for challenging his removal. Amended Complaint, ¶ 35. In late January of 1995, DeJoy was informed he would become the Director of Business Development. *Id.,* ¶ 35a. The Director of Business Development position, however, would have paid approximately twenty-five percent less then DeJoy was earning before his hospitalization. *Id.* Additionally, DeJoy learned the Director of Business Development did not exist. *Id.*

On or about 31 March 1995, DeJoy was informed in writing he was "removed from salary status and placed on disability insurance at a fraction of his normal pay."

Amended Complaint, ¶ 35b. The Defendants took this action despite a written agreement, dated 20 December 1994, that DeJoy would receive " 'Full Salary While On Leave Of Absence[.]' " *Id.*

Defendants subsequently discontinued De-Joy's salary on 7 April 1995. Amended Complaint, ¶ 35c. DeJoy was informed he would receive only disability payments in the amount of $2,500.00 per month. *Id.* DeJoy, however, never received any disability payments. *Id.* When DeJoy continued to challenge the Defendants' actions, Comcast Cable's "Director of Employee Relations suggested that [DeJoy] could be restored to his regular salary if he agreed to leave the company quietly, so that they could have 'closure.' " *Id.,* ¶ 35d. In April of 1995, the Defendants stopped paying De-Joy's medical and hospital insurance coverage. *Id.,* ¶ 35e. "Under written protest, DeJoy began paying the weekly premium for insurance coverage to avoid the threatened termination of his benefits." *Id.*

Defendants subsequently refused to return DeJoy to his position as Vice–President and General Manager of Suburban Cablevision when DeJoy's doctors cleared him to return to full-employment. Amended Complaint, ¶ 36–37. Defendants also refused to appoint DeJoy to the position of Area Vice–President of Comcast Cable. *Id.* DeJoy, who was qualified for both positions, *id.,* ¶¶ 38–39, was "constructively discharged from his employment with Comcast [Cable] at the conclusion of his medical leave of absence, on or about [23 May 1995]." *Id.,* ¶ 40.

#### D. *The Amended Complaint*

The Amended Complaint alleges thirteen counts. Only counts I, III, V, VI, XI and XII, however, are pertinent to the instant opinion. Moving Brief at 1.

Counts I and III of the Amended Complaint allege ADEA and ADA violations against the Defendants. Amended Complaint, ¶¶ 41–44, 50–60. Doyle and Baxter are sued as individuals. *Id.* DeJoy alleges Doyle and Baxter "engaged in unlawful employment practices by aiding, abetting, inciting and/or compelling the unlawful acts of discrimination against [him]...." *Id.,* ¶¶ 42–43, 55–56. Count V alleges a retaliation claim under the ADEA and ADA against all Defendants, including Doyle and Baxter as individuals. *Id.,* ¶ 68.

Count VI alleges a violation of public policy. DeJoy alleges the Defendants violated the clear mandate of the public policy of New Jersey against discrimination and retaliation by constructively discharging him. Amended Complaint, ¶¶ 71–74.

Counts XI alleges Doyle and Baxter tortiously interfered with DeJoy's contractual relationships with Suburban Cablevision and Comcast Cable. Amended Complaint, ¶ 102a. Count XII alleges DeJoy had a reasonable expectation of long-term prospective economic advantage with Comcast Cable, *id.,* ¶ 105, and that Doyle and Baxter maliciously interfered with DeJoy's prospective economic advantage. *Id.,* ¶ 106.

The *ad damnum* clause of the Amended Complaint demands judgment against the Defendants for: "(a) Back Pay and Benefits; (b) Front Pay and Benefits; (c) Injunctive Relief; (d) Compensatory Damages; (e) Punitive Damages; (f) Attorneys' Fees; (g) Costs of Suit; (h) Pre– and Post Judgment Interest; and (i) Such other relief as the Court deems appropriate." *Id.*

#### *Discussion*

A. *Standard For Dismissal Under Rule 12(b)(6)*

Because granting a motion under Rule 12(b)(6) can result in a dismissal at an early stage of a plaintiff's case, all allegations of a plaintiff are taken as true and all reasonable factual inferences are drawn in his or her favor. *Gomez v. Toledo,* 446 U.S. 635, 636 n. 3, 100 S.Ct. 1920, 1921 n. 3, 64 L.Ed.2d 572 (1980); *In re Westinghouse Securities Litigation,* 90 F.3d at 706; *McDowell v. Delaware State Police,* 88 F.3d 188, 189 (3d Cir.1996); *Nami v. Fauver,* 82 F.3d 63, 65 (3d Cir.1996); *Piecknick v. Pennsylvania,* 36 F.3d 1250, 1255 (3d Cir.1994); *Jordan v. Fox, Rothschild, O'Brien & Frankel,* 20 F.3d 1250, 1261 (3d Cir.1994). Nonetheless, legal conclusions made in the guise of factual allegations are not given a presumption of truthfulness. *See Bermingham v. Sony Corp. of*

*Am., Inc.,* 820 F.Supp. 834, 846 (D.N.J.1992), *aff'd,* 37 F.3d 1485 (3d Cir.1994). Although a court must assume the truth of all facts alleged, it is improper to presume a plaintiff can prove any facts not alleged in the Complaint. *Associated General Contractors v. California State Council of Carpenters,* 459 U.S. 519, 526, 103 S.Ct. 897, 902, 74 L.Ed.2d 723 (1983).

■ A court may dismiss a complaint for failure to state a claim "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984) (citing *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)); *see Hartford Fire Ins. Co. v. California,* 509 U.S. 764, 811, 113 S.Ct. 2891, 2916–17, 125 L.Ed.2d 612 (1993); *In re Westinghouse Securities Litigation,* 90 F.3d at 706 (dismissal only appropriate where "it appears certain the plaintiffs can prove no set of facts entitling them to relief"); *Piecknick,* 36 F.3d at 1255.

■ A Federal court reviewing the sufficiency of a complaint has a limited role. "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Estate of Bailey v. County of York,* 768 F.2d 503, 506 (3d Cir.1985), *overruled on other grounds, DeShaney v. Winnebago County Dep't of Soc. Servs.,* 489 U.S. 189, 197–98, 109 S.Ct. 998, 1004–05, 103 L.Ed.2d 249 (1989). As indicated, in the instant case, the Defendants seek to dismiss counts VI, XI and XII entirely and to dismiss counts I, III and V counts as against Doyle and Baxter. The question to be addressed is whether, accepting the allegations in the Amended Complaint as true, "no relief could be granted under any set of facts that could be proved consistent with the allegations" contained in these counts. *Associated General Contractors,* 459 U.S. at 526, 103 S.Ct. at 902.

B. *Individual Liability under the ADEA and the ADA*

The Defendants argue DeJoy's ADEA and ADA claims must be dismissed against Doyle and Baxter because "there is no individual liability under the ADEA or the ADA." Moving Brief at 7. DeJoy responds that supervisory employees, like Doyle and Baxter, may be held liable under these statutes. Opposition Brief at 6–7.

The ADEA provides:

It shall be an unlawful employment practice for an *employer*—

(1) to fail or refuse to hire or to discharge any individual, or to discriminate against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's age. . . .

29 U.S.C. § 623 (emphasis added); *see* 42 U.S.C. § 2000e–2(a)(1). The ADA provides:

No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112(a). The ADA defines a "covered entity" as "an *employer,* employment agency, labor organization, or joint labor-management committee." 42 U.S.C. 12111(2) (emphasis added).

Whether Doyle and Baxter may properly be held individually liable under the ADEA or the ADA, therefore, hinges on whether they may be considered "employers" under those statutes.

The term "employer" is defined as "a person engaged in an industry affecting commerce who has twenty or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year . . . [or] any agent of such a person. . . ." 29 U.S.C. § 630(b) (ADEA); *see* 42 U.S.C. § 12111(5)(A) (substantially similar definition under the ADA); *see also* 42 U.S.C. § 2000e(b) (substantially similar definition of employer under Title VII).

"In the context of employment discrimination, the ADA, ADEA and Title VII all serve the same purpose—to prohibit discrimination

in employment against members of certain classes." *Newman v. GHS Osteopathic, Inc.,* 60 F.3d 153, 157 (3d Cir.1995). Courts, including the Third Circuit, routinely use the case law under the three statutes interchangeably. *Id.; see DiBiase v. SmithKline Beecham Corp.,* 48 F.3d 719, 724 n. 5 (3d Cir.) (relying on both ADEA and Title VII cases when addressing ADEA claim), *cert. denied,* — U.S. ——, 116 S.Ct. 306, 133 L.Ed.2d 210 (1995).

When addressing the question of individual liability under the ADA, ADEA and Title VII, courts look to case law under all three statutes. *Stults v. Conoco, Inc.,* 76 F.3d 651, 655 (5th Cir.1996); *Williams v. Banning,* 72 F.3d 552, 553 (7th Cir.1995); *Matthews v. Rollins Hudig Hall Co.,* 72 F.3d 50, 52 n. 2 (7th Cir.1995) (dicta); *Thelen v. Marc's Big Boy Corp.,* 64 F.3d 264, 267 n. 2 (7th Cir. 1995) (dicta); *United States Equal Employ't Opportunity Comm'n v. AIC Security Investigations, Ltd.,* 55 F.3d 1276, 1280 (7th Cir. 1995); *Smith v. Lomax,* 45 F.3d 402, 403 n. 4 (11th Cir.1995); *Miller v. Maxwell's Int'l, Inc.,* 991 F.2d 583, 587 (9th Cir.1993), *cert. denied,* 510 U.S. 1109, 114 S.Ct. 1049, 127 L.Ed.2d 372 (1994).

As indicated, the ADEA, ADA and Title VII definitions of "employer" are virtually identical. Numerous courts of appeals have considered the question of employee liability in cases under the ADEA, ADA and Title VII. The majority of these courts have rejected the concept of employee liability. *See Stults,* 76 F.3d at 655, *Tomka v. Seiler Corp.,* 66 F.3d 1295, 1313–17 (2d Cir.1995); *Gary v. Long,* 59 F.3d 1391, 1399 (D.C.Cir.), *cert. denied,* — U.S. ——, 116 S.Ct. 569, 133 L.Ed.2d 493 (1995); *AIC Sec'y Investigations,* 55 F.3d at 1279–82; *Cross v. Alabama,* 49 F.3d 1490, 1504 (11th Cir.1995); *Smith,* 45 F.3d at 403 n. 4; *Grant v. Lone Star Co.,* 21 F.3d 649, 653 (5th Cir.), *cert. denied,* — U.S. ——, 115 S.Ct. 574, 130 L.Ed.2d 491 (1994); *Miller,* 991 F.2d at 587. Numerous district court decisions in the Third Circuit have likewise rejected employee liability. *See Johnakin v. City of Philadelphia,* No. 95–1288, 1996 WL 18821, at *6 (E.D.Pa. 18 January 1996) (listing cases in the Third Circuit which have limited liability to the employer); *see also Clarke v. Whitney,* 907 F.Supp. 893, 895 (E.D.Pa.1995); *Ascolese v. SEPTA,* 902 F.Supp. 533, 538 (E.D.Pa.1995); *Clark v. Commonwealth of Pennsylvania,* 885 F.Supp. 694 (E.D.Pa.1995); *Caplan v. Fellheimer Eichen Braverman & Kaskey,* 882 F.Supp. 1529, 1531 (E.D.Pa.1995); *Verde v. City of Philadelphia,* 862 F.Supp. 1329, 1334–1335 (E.D.Pa.1994).

The Third Circuit has not addressed the issue of individual liability under the ADA and the ADEA. The Third Circuit has, however, addressed the issue of individual liability under Title VII. *See Sheridan v. E.I. duPont de Nemours and Co.,* No. 94–7509, 1996 WL 36283 (3d Cir.), *vacated,* 74 F.3d 1459 (3d Cir.1996).

In *Sheridan,* the plaintiff, a hotel employee, argued the district court had erred by dismissing her Title VII claims against the hotel's general manager. 1996 WL 36283 at *12. The plaintiff argued, because 42 U.S.C. § 2000e(b) defined the term "employer" to include "any agent" of an employer and the hotel's general manager was an "agent" of the hotel, the hotel's general manager could be held personally liable under Title VII. *Id.* The Third Circuit rejected plaintiff's argument:

> Arguments such as Sheridan's have been considered by many of the other courts of appeals in cases under Title VII, as well as the [ADEA] and the [ADA], which contain definitions of an "employer" ... that mirror that of Title VII. Many of these courts appear to have completely rejected the concept of employee liability.... [W]e follow the great weight of authority from other courts of appeals and hold that an employee cannot be sued.

*Sheridan,* 1996 WL 36283 at *13 (citations omitted).

After DeJoy had filed the Opposition Brief, the Third Circuit again addressed the issue of whether individuals could be held liable under Title VII. *See Dici v. Commonwealth of Pennsylvania,* 91 F.3d 542 (3d Cir.1996). In *Dici,* the plaintiff, who had been denied workers' compensation benefits for "psychic injuries" resulting from alleged sexual and racial harassment, brought an action under Title VII and Pennsylvania law. *Id.* at 544.

The Third Circuit held the plaintiff could not "sustain her Title VII claims" against her supervisors. *Id.* at 552. The Third Circuit specifically held:

> When the issue of individual liability was before this court in *Sheridan v. E.I. de Nemours,* 74 F.3d 1439, 1996 WL 36283 (3d Cir.1996), *vacated,* 74 F.3d 1459 (3d Cir.1996), the court held that an individual employee cannot be liable under Title VII. The majority opinion ... noted the great weight of authority from other courts of appeals holding an employee cannot be sued under Title VII....
>
> The *Sheridan* opinion was withdrawn when the court voted to take the case *en banc....* However, the principal focus of the *en banc* briefs and arguments was on Title VII issues other than individual liability. In light of this, we conclude, for the reasons previously given by the court in *Sheridan* and the other courts of appeals, that individual employees cannot be held liable under Title VII.

*Dici,* 91 F.3d at 552.

■ As indicated the ADA and the ADEA share the same basic purpose as Title VII—"to prohibit discrimination in employment...." *Newman,* 60 F.3d at 157. The ADA, ADEA and Title VII, moreover, contain definitions of "employer" that "mirror" one another. *Sheridan,* 1996 WL 36283 at *13. Accordingly, counts I, III and V of the Amended Complaint are dismissed as against Doyle and Baxter pursuant to Rule 12(b)(6).

## C. *Preemption of Public Policy Claims by NJLAD*

Count VI of the Amended Complaint alleges a claim based on "a clear mandate of public policy in the State of New Jersey that individuals not be discriminated against because of age ... [or] because of disability or the perception that an individual has a disability ... or because they engage in protected activity or oppose unlawful or discriminatory conduct." Amended Complaint, ¶¶ 71–73. DeJoy alleges his constructive termination violated this public policy. *Id.,* ¶ 74.

The Defendants seek to dismiss count VI, pursuant to Rule 12(b)(6), on ground that the NJLAD preempts DeJoy's common law claims. Moving Brief at 11. Plaintiff responds:

> Contrary to defendants' assertion, it has not been established in New Jersey that an employee may not bring a claim for violation of public policy when the public policy at issue is the [NJLAD], the [ADEA] or the [ADA]. For example, in *Shaner v. Horizon Bancorp,* 116 N.J. 433, 454 [561 A.2d 1130] (1989), the New Jersey Supreme Court held that "[b]ecause the [NJLAD] provides ... a remedy, it *might be unnecessary* to recognize or create a[n] ... action to vindicate substantially the same rights and provide similar relief" (emphasis added). However, the Supreme Court has not ruled that such a claim does not exist as a matter of law.... Furthermore, [DeJoy's] public policy violation is not limited to a violation of the NJLAD.

Opposition Brief at 12–13 (emphasis in original).

■ "[A] common law claim for wrongful termination is not viable insofar as it seeks the same remedy available under the [NJLAD]." *Kapossy v. McGraw–Hill, Inc.,* 921 F.Supp. 234, 249 (D.N.J.1996) (citing *Catalane v. Gilian Instr. Corp.,* 271 N.J.Super. 476, 491–92, 638 A.2d 1341 (App.Div.1994), *cert. denied,* 136 N.J. 298, 642 A.2d 1006 (1994)); *see Butler v. Sherman Silverstein & Kohl, P.C.,* 755 F.Supp. 1259, 1263 (D.N.J. 1990) (predicting that New Jersey Supreme Court would hold the NJLAD preempts a common law claim for wrongful discharge on grounds of racial discrimination).

The NJLAD provides:

> It shall be an unlawful employment practice, or, as the case may be, an unlawful discrimination:
>
> a. *For an employer,* because of the race, creed, color, national origin, ancestry, *age,* marital status, affectional or sexual orientation, sex or atypical hereditary cellular or blood trait of any individual, or because of the liability for service in the Armed Forces of the United States or the nationality of any individual, to refuse to hire or employ or to bar or to discharge or require to retire, unless justified by lawful considerations other than age, from employment

such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment....

N.J.S.A. § 10:5–12 (emphasis added). The New Jersey Legislature declared its intent the NJLAD be interpreted liberally:

> The legislature ... finds that because of discrimination, people suffer personal hardships, and the State suffers a grievous harm. The personal hardships include: time loss; physical and emotional stress; and in some cases severe emotional trauma, illness, homelessness or other irreparable harm resulting from the strain of employment controversies; relocation, search and moving difficulties; anxiety caused by lack of information, uncertainty, and resultant planning difficulty; career, education, family and social disruption; and adjustment problems, which particularly impact on those protected by this act. Such harms have, under the common law, given rise to legal remedies including compensatory and punitive damages. The Legislature intends that such damages be available to all persons protected by this act and this act shall be liberally construed in combination with other protections available under the laws of this State.

N.J.S.A. 10:5–3.

In *Catalane*, the plaintiff brought an action against his employer alleging, among other things, he was unlawfully terminated because of his advanced age in violation of the NJLAD and for reasons that were contrary to public policy. 271 N.J.Super. at 481, 638 A.2d 1341. On appeal, the defendants argued the plaintiff's public policy claim was preempted by the NJLAD. *Id.* at 491, 638 A.2d 1341. The court held that where the NJLAD provided a remedy, plaintiff's public policy claims were preempted:

> Our Legislature has declared the remedies available under the [NJLAD] and would appear to have expressed the view that a common law claim for discrimination is unnecessary as the statute should be read broadly enough to encompass those claims and damages previously available at common law.... Based on the legislative intent [expressed in N.J.S.A. 10:5–3] ...

we conclude that the plaintiff's common law claim that he was terminated because of his age in violation of public policy should not have been submitted to the jury. His *right and cause of action were statutory.*

*Catalane*, 271 N.J.Super. at 492, 638 A.2d 1341 (emphasis added).

As indicated, DeJoy argues his public policy claim "is not limited to a violation of the [NJLAD]." Opposition Brief at 12–13. Aside from this conclusory statement, however, DeJoy provides no information showing his public policy claim is different or broader than the his various statutory claims. Evidence of the "redundancy" of DeJoy's public policy claim is found in count VI of the Amended Complaint where DeJoy alleges: "Defendants, jointly and severally, unlawfully violated clear mandates of public policy by discriminating and retaliating against plaintiff as more fully described in Counts I through V herein." Amended Complaint, ¶ 74. Counts I through V allege causes of action under Federal and State statutes. In count VI, DeJoy does not make separate allegations and it appears he simply seeks recovery under the public policy of New Jersey for the same alleged wrongs for which he seeks recovery under Federal and State statutes in the prior counts. *Id.*

■ Because the NJLAD preempts DeJoy's New Jersey common law claim, count VI is dismissed in its entirety, pursuant to Rule 12(b)(6).

### D. Interference With Contractual Relations and Prospective Economic Advantage

Count XI of the Amended Complaint alleges Doyle and Baxter are liable for intentional interference with a contractual relationship between DeJoy and both Suburban Cablevision and Comcast Cable. Amended Complaint, ¶ 102a. Count XII of the Amended Complaint alleges Baxter and Doyle "maliciously interfered with [DeJoy's] prospective economic advantage" with Comcast Cable. *Id.*, ¶ 106.

■ Under New Jersey law, a claim for tortious interference with a contract has five

elements. Those elements are "(1) a plaintiff's existing or reasonable expectation of economic advantage or benefit; (2) a defendant's knowledge of the plaintiff's expectancy; (3) wrongful and intentional interference with that expectancy by the defendant; (4) a reasonable probability that the plaintiff would have received the anticipated economic advantage absent such interference; and (5) damages resulting from the defendant's interference." *Pitak v. Bell Atlantic Network Svcs., Inc.*, 928 F.Supp. 1354, 1369 (D.N.J. 1996) (citing *Lightning Lube v. Witco*, 4 F.3d 1153, 1167 (3d Cir.1993)); *see Printing Mart–Morristown v. Sharp Elec. Corp.*, 116 N.J. 739, 751–53, 563 A.2d 31 (1989).

The Supreme Court of New Jersey has identified four elements necessary to establish a *prima facie* case of interference with a prospective economic advantage: (1) a reasonable expectation of economic advantage to plaintiff; (2) interference done intentionally and with "malice"; (3) causal connection between interference and the loss of prospective gain, and (4) actual damages. *Printing Mart*, 116 N.J. at 751–52, 563 A.2d 31; *see Varrallo v. Hammond Inc.*, 94 F.3d 842, 847–48 (3d Cir.1996).

■ "It is 'fundamental' to a cause of action for tortious interference with a prospective economic relationship that the claim be directed against defendants who are not parties to the relationship." *Printing Mart*, 116 N.J. at 752, 563 A.2d 31; *see also Cappiello v. Ragen Precision Indus., Inc.*, 192 N.J.Super. 523, 529, 471 A.2d 432 (App.Div.1984) (tortious interference with contract "requires the meddling into the affairs of another") (citing *Sandler v. Lawn–A–Mat Chem. & Equip. Corp.*, 141 N.J.Super. 437, 450, 358 A.2d 805 (App.Div.), *cert. denied*, 71 N.J. 503, 366 A.2d 658 (1976)). "[T]he rule of tortious interference was not meant to upset the rules

governing the contractual relationship itself. Where a person interferes with the performance of his or her own contract, the liability is governed by principles of contract law." *Id.* at 753, 563 A.2d 31.

The Defendants seek to dismiss counts XI and XII as to Baxter and Doyle. Moving Brief at 14–17. The Defendants assert "[t]here are no allegations that either of these individuals acted *outside* the scope of their employment [and] [n]either individual can therefore be considered a third party to [DeJoy's] alleged contractual relationship with Comcast [Cable] or his alleged future contractual relationship with Comcast [Cable]." Moving Brief at 17 (emphasis in original). DeJoy responds his claims for tortious interference with his contractual relationship and his prospective economic advantage are viable because Doyle and Baxter acted outside the scope of their employment because they acted for personal gain. Opposition Brief at 15 (citing Amended Complaint, ¶¶ 102a, 106).

If DeJoy merely alleged Baxter and Doyle, acting within the scope of their employment, interfered with his contractual rights and his prospective economic benefit, the dismissal of counts XI and XII would be appropriate.[3] *See Michelson v. Exxon Research and Engineering Co.*, 808 F.2d 1005, 1007–08 (3d Cir. 1987) (applying Pennsylvania law); *Pitak*, 928 F.Supp. at 1369–70; *Obendorfer v. Gitano Group, Inc.*, 838 F.Supp. 950, 956 (D.N.J. 1993) (dismissing claim by employee against supervisor for tortious interference where supervisor was acting in the course of his employment). Despite the Defendants' argument to the contrary, however, the Amended Complaint can be read, under the principles of notice pleading, to allege Doyle and Bax-

---

**3.** The Complaint alleged "Doyle and Baxter, without justification, tortiously interfered with plaintiff's contractual relationships." Complaint, ¶¶ 102, 106. The Complaint did not allege Doyle and Baxter acted outside the scope of their employment; accordingly, dismissal of counts XI and XII of the Complaint would have been appropriate. *Obendorfer*, 838 F.Supp. at 956, *infra*. As indicated, however, DeJoy included allegations that Doyle and Baxter were acting "for their own personal gain and personal ad-

vancement" in counts XI and XII of the Amended Complaint. Amended Complaint, ¶¶ 102a, 106. These allegations protect counts XI and XII against dismissal. Counsel for DeJoy has certified "the allegations ... have evidentiary support or ... are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery...." Fed.R.Civ.P. 11(b)(3). Of course, these allegations are also subject to the provisions of Fed.R.Civ.P. 11(c).

ter acted outside the scope of their employment with Comcast Cable.

As indicated, DeJoy alleges Baxter and Doyle "tortiously interfered" with his contractual relationships with both Suburban Cablevision and Comcast Cable. Amended Complaint, ¶ 102a. As noted, DeJoy alleges Baxter and Doyle acted *"for their own personal gain and personal advancement." Id.* (emphasis added). Similarly, DeJoy alleges Baxter and Doyle interfered with his prospective economic advantage with Comcast Cable for their *"own personal gain and advancement." Id.,* ¶ 106 (emphasis added). Because DeJoy alleges Baxter and Doyle acted outside the scope of their employment, counts XI and XII allege viable claims. *see Michelson,* 808 F.2d at 1007–08.

In *Michelson,* the Third Circuit, applying Pennsylvania law, "set forth the test for determining whether an officer or agent of a corporation is a third party to an employment contract between the employer and the employee." *Obendorfer,* 838 F.Supp. at 956. The *Michelson* court held:

> [C]orporations act only through its (sic) officers and agents, and that a party cannot be liable for tortious interference with a contract to which he is a party. If [the defendant employee] was acting within the scope of his employment in allegedly interfering with appellant's contract, he was acting on behalf of [the employer] and [appellant's] claim is barred.... *If [the employee] was acting outside the scope of his employment in allegedly interfering with appellant's contract, appellant's claim is not barred....*

*Michelson,* 808 F.2d at 1008–08 (emphasis added).[4]

<hr/>

**4.** Although *Michelson* was decided under Pennsylvania law, both New Jersey law and Pennsylvania law require that a plaintiff allege a third party interfered with a contractual relationship to establish tortious interference and "under the laws of both jurisdictions a corporation may only act through its agents and officers." *Obendorfer,* 838 F.Supp. at 956 n. 2. The *Michelson* decision, therefore, may properly be relied upon when addressing this issue under New Jersey law. *See e.g., McDermott v. Chilton Co.,* 938 F.Supp. 240, 243 (D.N.J.1995); *Obendorfer,* 838 F.Supp. at 956 n. 2.

The Defendants conclusorily argue DeJoy "has alleged that Doyle and Baxter were acting within the scope of their employment by alleging they had actual or apparent authority over [DeJoy]." Reply Brief at 6. The Defendants, however, provide no support for this argument. The Defendants further argue DeJoy cannot support his allegations Doyle and Baxter tortiously interfered with DeJoy's contractual relationship and prospective economic advantage with Suburban Cablevision and Comcast Cable, Reply Brief 5–6; this argument is premature. As indicated, the present question is not whether DeJoy has proven his claims; rather the question is whether DeJoy is "entitled to offer evidence to support the claims." *Scheuer,* 416 U.S. at 236, 94 S.Ct. at 1686. Because DeJoy has alleged Doyle and Baxter acted for personal gain, DeJoy is entitled to pursue his claim they tortiously interfered with is employment contract and his prospective economic benefit. *See Michelson,* 808 F.2d at 1008–09.

### Conclusion

For the reasons stated, the Motion to Dismiss is granted, in part, and denied, in part, pursuant to Rule 12(b)(6). Count VI is dismissed in its entirety and counts I, III and V are dismissed as against Doyle and Baxter. To the extent it seeks the dismissal of counts XI and XII, the Motion to Dismiss is denied.

The Third Circuit recently held a supervisor may be held liable for tortious interference. *See Varrallo,* 94 F.3d 842. In *Varrallo,* the plaintiff brought an action against his former employer and his former supervisor. *Id.* at 843–44. Because the supervisor had ordered the plaintiff to commit the acts for which the plaintiff was fired and by the supervisor's subsequent actions made it appear the plaintiff's actions were unjustified, the court found the plaintiff had "made out a sufficient case for tortious interference to survive summary judgment." *Id.* at 849.